UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIANNA STROUT,<br><br>PLAINTIFF<br><br>v.<br><br>NETCRACKER TECHNOLOGY CORPORATION,<br><br>DEFENDANT. | CIVIL ACTION NO. 1:16-cv-10354-LTS |

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND**

For its answers and defenses to the Complaint and Jury Demand (the "Complaint") of plaintiff Julianna Strout ("Strout" or "Plaintiff"), defendant NetCracker Technology Corporation ("NetCracker," the "Company," or "Defendant") states as set forth herein. Answers to each paragraph of the Complaint are made without waiving, but expressly reserving, all rights that Defendant may have to seek relief by appropriate motions directed to the allegations of the Complaint. Defendant answers the allegations set forth in the separately numbered paragraphs of the Complaint as follows:

**PARTIES & JURISDICTION**

1. Defendant lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 1 and therefore denies them.

2. Defendant admits the allegation in Paragraph 2.

3. Defendant admits the allegation in Paragraph 3.

4. Paragraph 4 of the Complaint contains a conclusion of law to which no response is required; to the extent an answer may be deemed required, Defendant denies the allegation in Paragraph 4.

## I. FACTS

5. Defendant admits that there is a requisition form for the Event Manager position. The contents of this form speak for themselves. To the extent that Plaintiff seeks to characterize the form, Defendant denies the characterization. Further answering, Defendant states that Strout commenced employment at NetCracker on August 26, 2013 as an Event Manager. Defendant denies the remaining allegations in Paragraph 5.

6. Defendant lacks sufficient knowledge or information to form a belief as to the allegations in the second and third sentences in Paragraph 6, and therefore denies them. Defendant admits that Winter Wyman, a contract staffing firm, submitted Strout's application to fill a position for Executive Assistant to the CEO. Further answering, Defendant states that Winter Wyman submitted Strout's resume to NetCracker, which reflected that she had a B.S. from UMASS Dartmouth and an M.B.A. from Salve Regina University in Newport, Rhode Island, and that her last job before applying to NetCracker was as an Executive Assistant to the CEO and Office Manager of American Well from November 2012 to June 2013. Further answering, Defendant states that it made arrangements for Strout to interview for the Event Manager position upon learning about Strout's professed passion for, and experience in, event planning during her interview for the Executive Assistant role. Defendant lacks sufficient knowledge or information to form a belief regarding whether unspecified "Netcracker representatives" told Strout they felt the Event Manager position was "more in line with her qualifications," and therefore denies it. Defendant denies the remaining allegations in Paragraph 6.

7. Defendant denies the allegations in Paragraph 7. Further answering, Defendant states that Vice President Frank DeTraglia was one of the executives who initially interviewed

Strout, and that, during this interview, Strout brought up the topic of her participation in the Miss America pageant.

8. Defendant admits that Strout attended her first trade show, the SCTE Cable-Tec Expo in Atlanta, during the week of October 21-24, 2013, which was attended by approximately fifteen NetCracker employees, including her supervisor, Joanna Larivee, Sr. Director of Marketing, and Larivee's supervisor, DeTraglia. Defendant denies the remaining allegations in Paragraph 8.

9. Defendant denies the allegations in Paragraph 9. Further answering, Defendant states that NetCracker sponsored a reception at the Sky Lounge where a raffle-style drawing for Super Bowl tickets initially was scheduled to be held, but was postponed due to the low turnout at the reception. Defendant further states that Larivee possessed the microphone because she served as the "MC" for the function, and in that role, encouraged members of the audience to dance and sing along with the music. Additionally, Defendant states that NetCracker was unaware of Strout's allegation that she was groped by a customer from Cox Communications until it received her MCAD Charge. Defendant lacks sufficient knowledge or information to form a belief as to Strout's alleged conversation with a bartender at this event, and therefore denies it.

10. Defendant admits the allegations in the second sentence, and denies the allegations in the first and third sentences, in Paragraph 10.

11. Defendant denies the allegations in Paragraph 11.

12. Defendant admits that Strout attended a trade show in San Jose beginning on Monday, October 28, 2013, the week following the Atlanta trade show, and that she traveled to San Jose over the weekend. Further answering, Defendant states that the bonus payment Strout

and other NetCracker employees received was expressly tied to the performance of the Company during the first half of the fiscal year, not to Strout's individual performance. Defendant denies the remaining allegations in Paragraph 12.

13. Defendant denies the allegations in Paragraph 13.

14. Defendant lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 14, and therefore denies them.

15. Defendant denies the allegations in Paragraph 15. Further answering, Defendant states that on the morning of October 28, 2013, the first day of the San Jose Trade Show, Vice President Sanjay Mewada conducted an "all hands" meeting to confirm the activities planned for the trade show that day, including who was staffing each of the activities. During this meeting, Strout and two other NetCracker employees from the events planning team, as well as a sales engineer, were directed to join the dinner scheduled that evening for Darren Guttenplan, a NetCracker Account Manager, Moshe Moran, the Vice President of Sales, and their respective customers.

16. Defendant admits that a dinner for various individuals on NetCracker's sales team, as well as their respective customers, was held the evening of October 28, 2013 in San Jose. Defendant denies the remaining allegations in Paragraph 16.

17. Defendant denies the allegations in Paragraph 17.

18. Defendant denies that the NetCracker customer, Peter, asked if Strout would join him and others for drinks and denies that Strout had reason to be "extremely uncomfortable and concerned that Peter would try to pressure her into going to the bar with him." Defendant lacks sufficient knowledge or information to form a belief as to whether any of the attendees of the

dinner discussed going to a bar called the Tanq Lounge for drinks after dinner, and therefore denies the same. Defendant denies the remaining allegations in Paragraph 18.

19. Defendant denies the allegations in Paragraph 19.

20. Defendant denies the allegations in Paragraph 20.

21. Defendant admits that, because Strout left the dinner without communicating to her that she would be leaving, Kate Viles, a NetCracker employee, sent Strout a text message asking where she was, and Strout responded that she had left for a meeting with Sylvain Seignour, the Vice President for the Americas, and was not returning to the dinner. Defendant lacks sufficient knowledge or information to form a belief regarding whether Gerel Mandzhieva texted Strout to ask where she had gone and why she had left, and therefore denies this. Defendant denies the remaining allegations in Paragraph 21.

22. Defendant lacks sufficient knowledge or information to form a belief as to Strout's alleged emotional state after leaving the dinner, or as to whether Strout spoke to a friend, her father, her boyfriend, or to a co-worker, Marthe Teixeira, later that evening, and therefore denies these allegations. Defendant denies the remaining allegations in Paragraph 22.

23. Defendant denies the allegations in Paragraph 23.

24. Defendant admits the allegations in the first sentence of Paragraph 24 and admits that, after the morning conference call between Strout and Larivee on October 29, 2013, Guttenplan spoke with Larivee on the telephone. Defendant further admits that, later that day, Larivee sent Strout an e-mail instructing her to return to Boston on the next available flight home. The contents of this e-mail speak for themselves. To the extent that Plaintiff attempts to characterize the e-mail, Defendant denies the characterization. Additionally, Defendant admits that Strout called Larivee after receiving Larivee's e-mail, that Larivee declined to discuss the e-

mail until she met with Strout in person at their meeting scheduled for the next day, and that Larivee advised Strout to return to Boston and not to discuss the situation with anyone. Defendant denies the remaining allegations in Paragraph 24.

25. Defendant admits that, on October 29, 2013, Strout had a conversation with Edward Finegold in which she mentioned the dinner the previous night. Defendant denies the remaining allegations in Paragraph 25.

26. Defendant admits that, on the morning of October 30, 2013, Larivee and Valerie Pineda, a Human Resources Business Partner at NetCracker, met with Strout at NetCracker's offices to discuss Strout's termination, and that at the conclusion of the meeting, a cab was ordered for Strout to take her home. Defendant denies the remaining allegations in Paragraph 26.

27. Defendant denies the allegations in the first two sentences of Paragraph 27. The third sentence of Paragraph 27 consists of legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in the third sentence of Paragraph 27.

## COUNT I

***Sexual Harassment and Retaliatory Firing in Violation of M.G.L. c. 151B, §§ 4(4) and 4(16A) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) and 2000e-3***

28. Defendant incorporates its responses to Paragraphs 1 – 27 of the Complaint herein.

29. Paragraph 29 consists of legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 29.

30. Paragraph 30 consists of legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 30.

31. Paragraph 31 consists of legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 31.

32. Paragraph 32 consists of legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations in Paragraph 32.

## PRAYER FOR RELIEF

Defendant states that the unnumbered statement beginning "WHEREFORE" is not susceptible to a response. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief requested in it.

## GENERAL DENIAL

Defendant denies each and every allegation, premise, or theory contained in Plaintiff's Complaint and Demand for Jury Trial not specifically admitted herein to be true.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Complaint, in whole or in part, fails to state a claim on which relief can be granted.

### SECOND DEFENSE

To the extent Plaintiff's claims are based on alleged actions that occurred outside the applicable statutes of limitation, such claims are barred.

### THIRD DEFENSE

To the extent that Plaintiff mitigated, minimized or avoided any damages allegedly sustained, any economic damages against Defendant must be reduced by that amount. In addition, to the extent that Plaintiff failed to make reasonable efforts to mitigate, minimize or

avoid any damages allegedly sustained, any economic damages against Defendant must be barred.

## FOURTH DEFENSE

To the extent Defendant took any actions with regard to Plaintiff's employment, any and all actions Defendant took with respect to Plaintiff's employment were taken for legitimate, nondiscriminatory, nonretaliatory reasons.

## FIFTH DEFENSE

At all times relevant to the allegations in the Complaint, Defendant exercised reasonable care to prevent and correct promptly discriminatory behavior brought to its attention. Further, at all times relevant to the allegations in the Complaint, Defendant had an effective policy in place for the prevention and correction of unlawful discriminatory practices. Notwithstanding the existence of this policy, Plaintiff unreasonably failed to utilize it in connection with some or all of the allegations of unlawful discrimination asserted in her Complaint.

## SIXTH DEFENSE

Plaintiff's claims are barred to the extent Plaintiff failed to exhaust her administrative remedies and/or failed to comply with the administrative prerequisites applicable to her claims.

## SEVENTH DEFENSE

To the extent Plaintiff's claims are subject to the doctrines of laches, waiver, and/or assumption of the risk, such claims are barred.

## EIGHTH DEFENSE

Plaintiff's claims are barred and/or limited by the after-acquired evidence doctrine to the extent that discovery shows she engaged in misconduct prior to, during, after, or in connection with her employment, that otherwise would have resulted in her not being hired, or in her

discharge, if such conduct were then known to Defendant.

**NINTH DEFENSE**

Defendant hereby gives notice that it intends to rely upon such further defenses as may become available and apparent during discovery proceedings in this case and hereby reserves the right to amend this answer and assert such defenses.

Respectfully submitted,

**NETCRACKER TECHNOLOGY CORPORATION**

By its attorneys,

/s/ Jennifer M. Duke
David Casey (BBO #077260)
Jennifer M. Duke (BBO #682294)
**LITTLER MENDELSON, P.C.**
One International Place
Suite 2700
Boston, MA 02110
Phone 617.378.6000
Fax 617.737.0052
dcasey@littler.com
jduke@littler.com

February 26, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of February, 2016, the foregoing *Answer to Plaintiff's Complaint and Jury Demand* was filed through the ECF system and will be sent electronically to those registered participants and via first class mail to those non-registered participants as identified on the Notice of Electronic Filing.

/s/ Jennifer M. Duke
Jennifer M. Duke

Firmwide:138945092.3 049253.1008